IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BOBBY JAMES WILLIAMS,

        Plaintiff,            No. 2:11-cv-0055 KJM AC P

    vs.

DANIEL MOELLER,

        Defendant.        <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

Plaintiff proceeds pro se and in forma pauperis on his complaint, filed January 6, 2011, alleging that defendant Daniel Moeller, a representative of the state Board of Parole Hearings, violated his due process rights when defendant failed to provide sufficient procedural protections to plaintiff before conducting a "Documentation Hearing" in July 2008. <u>See</u> Doc. No. 1 at 14. Plaintiff specifically does not challenge his conviction or sentence. <u>See</u> <u>id.</u> at 17. Plaintiff seeks declaratory and injunctive relief. <u>Id.</u>

Defendant has moved for summary judgment. Doc. No. 21. Plaintiff opposes the motion, and additionally seeks leave to amend in order to add additional claims, and an additional defendant, Licensed Clinical Social Worker A. Caruso, employed at Salinas Valley State Prison. <u>See</u> Doc. No. 24. For the reasons set forth below, the undersigned recommends that defendant's motion for summary judgment be granted, and plaintiff's motion to amend be

1

1   denied.

2       <u>Background</u>

3       The following facts are undisputed, unless otherwise noted.

4       Plaintiff suffers from "several mental illnesses and lack of meaningful education."

5   <u>See</u> Doc. No. 24 at 2.  He was convicted by jury in 1996 of robbery and receiving stolen

6   property.  <u>See</u> Defendant's Statement of Undisputed Facts ("DUF"), Ex. A ("Vanrossen Decl."),

7   Attach. 1 and 2.  Plaintiff was originally sentenced in May 1996 to a term of 60 years to life.  <u>Id.</u>

8   The trial court later amended the sentence after appeal; however, the total term of plaintiff's

9   amended sentence remained 60 years to life.  DUF 2, 3.[1]

10      On an unknown date in 2003, A. Caruso, a licensed clinical social worker at

11  Salinas Valley State Prison, gave plaintiff copies of two CDC Forms 128-C entitled "Mental

12  Health Pre-Release Needs Assessment/Transitional Case Management Program," which led

13  plaintiff to believe that he was being assessed for the "Pre-Release Program" under California

14  Code of Regulations, Title 15, § 3502.   Doc. No. 24 at 2; Doc. No. 1 at 27.

15      Also on an unknown date in 2003, Caruso gave plaintiff a "Transitional Case

16  Management Program" notice which instructs plaintiff to "give this notice to your parole agent

17  upon release."  Doc. No. 24 at 2; Doc. No. 1 at 28.  The notice, which identifies plaintiff by

18  name and CDC number, advises the parole officer that "your parolee is still required to attend

19  the Parole Outpatient Clinic (POC)" and that "[a]ttendence at POC is a very important part of

20  parole to ensure that your parolee remains successful once he/she is released from prison."  Doc.

21  No. 1 at 28.

22      On May 6, 2008, an agent of the Board of Prison Terms certified that he or she

23  gave notice to plaintiff of plaintiff's documentation hearing scheduled for July 7, 2008.  <u>See</u>

24

25      [1]  Defendant's statement of undisputed facts reads that the amended judgment was issued
    on September 24, 2007; however, the amended judgment itself is dated September 24, 1997.  <u>Cf.</u>
26  DUF 2, 3 with Vanrossen Decl, Attach. 2.

2

1  Doc. No. 24 at 16.  Plaintiff disputes that he received notice.  See Doc. No. 24 at 3.

2          On July 7, 2008, defendant Daniel Moeller conducted a "documentation hearing"

3  with plaintiff, pursuant to California Penal Code § 3041(a).  DUF 6, 7.  A documentation hearing

4  is intended to allow for the Board of Parole Hearings ("BPH" or "Board") to review an inmate's

5  file, to document pertinent conduct, and to make recommendations regarding programing.  DUF

6  7.  Following the review of the file, a commissioner meets with the inmate and provides the

7  inmate with recommendations regarding positive programming that will assist in  parole

8  consideration.  Id.  No determinations regarding a prisoner's suitability for parole are made at a

9  documentation hearing.  DUF 8.

10          Defendant had no authority either to grant or to deny plaintiff parole on July 7,

11  2008.  DUF 8.  The earliest date on which plaintiff will be eligible for parole is February 4,

12  2055.  DUF 4.  Plaintiff has never been eligible for parole, from the time he began serving his

13  current sentence, through the present.  DUF 5.

14          At the July 7, 2008 hearing, defendant made no recommendations or requirements

15  as to possible terms of plaintiff's eventual parole.  DUF 9.  Defendant did not establish any

16  requirements or make any recommendations that plaintiff be psychiatrically evaluated.  Id.

17  Defendant had no authority to do any of these things at a documentation hearing.  Id.

18                     Defendant's Motion for Summary Judgment

19          Defendant now moves for summary judgment, arguing that plaintiff had no liberty

20  interest at stake at the documentation hearing, and was therefore not entitled to any procedural

21  due process protections under the Fourteenth Amendment.  See Doc. No. 21 at 5.  Instead,

22  procedural protections are reserved for those hearings at which a decision will be made on

23  whether to grant or to deny an inmate release on parole.  Id.  In plaintiff's case, that will not be

24  until 2055.  Id.  Defendant contends that, because defendant had no authority to grant or to deny

25  parole, the documentation hearing could never give rise to a due process violation.  Id.

26          Plaintiff opposes the motion.  Doc. No. 24.  Plaintiff

                                            3

> concedes that he has no release date or liberty interest, and brought this
> action claiming he did because defendant Caruso led him to believe he
> was being released and Moeller did nothing to disspell [sic] this belief
> save deny him parole.  Plaintiff was incapable of knowing that Moeller
> could not grant him parole, and it was Moeller's duty to ensure plaintiff
> understood this.

Doc. No. 24 at 8.

Plaintiff argues that his due process rights were violated because defendant Moeller knew that plaintiff was mentally ill and developmentally disabled, and therefore was "duty bound" to: (1) ensure that plaintiff's "procedural safeguards had been adhered to," and to reschedule the hearing upon learning that they had not; (2) take steps to ensure that plaintiff was capable of understanding the nature of the hearing, and also capable of understanding the hearing, by assigning a staff assistant; and (3) investigate why there was paperwork in plaintiff's file indicating that plaintiff's release was imminent, and whether there was any "validity" to it. See Doc. No. 24 at 4, 6.  In support, plaintiff cites to various California Department of Corrections and Rehabilitation ("CDCR") regulations which govern disciplinary and classification hearings.  See Doc. No. 24 at 5.

As discussed below, plaintiff seeks to amend his complaint to add Caruso as a defendant.  See Doc. No. 24 at 7.  Plaintiff does not provide the court with a copy of his proposed amended complaint, as required by Local Rule 137(c).

Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of
> "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of material
> fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

1   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

2   versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

3   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

4   genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

5   committee's note on 1963 amendments).

6          In resolving the summary judgment motion, the court examines the pleadings,

7   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

8   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

9   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

10  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

11  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

12  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

13  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

14  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

15  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

16  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

17  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

18          Relevant Authority

19          The Fourteenth Amendment prohibits any state from depriving a person of life,

20  liberty or property without due process of law.  Meachum v. Fano, 427 U.S. 215, 223 (1976).

21  Analysis under the Due Process Clause proceeds in two steps: "[w]e first ask whether there

22  exists a liberty or property interest of which a person has been deprived, and if so we ask

23  whether the procedures followed by the State were constitutionally sufficient." Swarthout v.

24  Cooke, __ U.S. __, 131 S.Ct. 859, 861 (2011); see also Meachum, 427 U.S. at 223-24 (initial

25  inquiry is whether prisoners had liberty interest).

26          Under certain circumstances, states may create liberty interests which are

6

1   protected by the Due Process Clause.  Sandin v. Conner, 515 U.S. 472, 484 (1995).  These

2   interests are generally limited to freedom from restraint which, while not exceeding the sentence

3   in such an unexpected manner as to give rise to protection by the Due Process Clause as of its

4   own force, nevertheless imposes atypical and significant hardship on the inmate in relation to the

5   ordinary incidents of prison life.  Id.

6           However, section 1983 offers no redress to those violations of a state law which

7   amount to deprivation of a state-created interest that reaches beyond that guaranteed by the

8   federal constitution.  Sweaney v. Ada County, Idaho,  119 F.3d 1385, 1391 (9th Cir.1997),

9   quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir.1996); see also Rivera v.

10   Illinois, 556 U.S. 148, 158 (2009) (error in trial court's application of preemptory challenges

11   "not a matter of federal constitutional concern;" due process clause does not safeguard

12   "meticulous observance of state procedural prescriptions"); Cousins v. Lockyer, 568 F.3d 1063,

13   1070 (9th Cir. 2009) (there is no liability under § 1983 for violation of prison policy; plaintiff

14   must prove that official violated his federal constitutional right).

15           When a state does create a liberty interest, the Due Process Clause requires fair

16   procedures for its vindication – and federal courts will review the application of those

17   constitutionally required procedures.  Swarthout, 131 S.Ct. at 862.  For example, in the context

18   of parole, a California prisoner receives adequate process when he is allowed an opportunity to

19   be heard and is provided a statement of the reasons parole was denied.  Id.

20           Analysis

21           In order to defeat summary judgment, plaintiff, who is the non-moving party and

22   would have the burden of proof at trial, must establish that he has a liberty interest which was

23   somehow affected by the documentation hearing.  This the plaintiff has not done – indeed, he

24   concedes that he has no such interest.  Doc. No. 24 at 8.

25           Review of the record reflects that: (1) plaintiff was not eligible for parole at the

26   time of the documentation hearing, (2) plaintiff will not be eligible for parole until 2055, and (3)

1  defendant has no authority to grant or to revoke parole at the documentation hearing.  DUF 4, 5,

2  8.  The documentation hearing appears largely informational – the purpose is to give an inmate

3  some notion of how the inmate is progressing toward eventual parole.  See Cal. Penal Code

4  §3041(a) (meeting held "for the purposes of reviewing the inmate's file, making

5  recommendations, and documenting activities and conduct pertinent to granting or withholding

6  postconviction credit"); Cal. Code Reg., Title 15, § 2269.1(a).  Nothing about the hearing works

7  as a "restraint," much less an "atypical and significant hardship on the inmate in relation to the

8  ordinary incidents of prison life."[2]

9          Taking plaintiff's allegations as true – that he did not receive advance notice of

10 the hearing, that he was not provided with a staff assistant, and that he did not understand the

11 nature of the hearing – defendant cannot be liable to plaintiff on account of these deprivations, as

12 defendant had no duty to provide them to plaintiff in the absence of an interest for these

13 procedures to protect.  Even assuming that defendant somehow violated a regulation or other

14 prison policy, there is no independent cause of action under 42 U.S.C. § 1983 for violating a

15 state prison policy or regulation.

16          Plaintiff's Motion to Amend the Complaint

17          In his opposition to the motion for summary judgment, plaintiff "moves the court

18 to amend the complaint to add LCSW A. Caruso, a Licensed Clinical Social Worker (LCSW)

19 employed at Salinas Valley State Prison (SVSP) as a defendant, and for the courts to send

20 plaintiff the necessary forms for service on Caruso."  Doc. No. 24 at 7.  Plaintiff writes that he

21 wishes to sue Caruso in his individual and official capacity for money damages.  Id.

22          Plaintiff additionally wants to make "further amendments," including: (1) no

23

24        [2]  The state regulation, Title 15, § 2269.1, reads that the reports generated at the
   documentation hearing may be used by the BPH later, after a parole date is set, to determine
25 application of credits.  Plaintiff does not argue that such potential future use may constitute harm
   sufficient to support his current claims.  The court notes that this possible use of the reports in
26 the future is entirely speculative, as is any potential harm.

8

1   longer suing defendant Moeller in his "professional" capacity, and (2) suing defendant Moeller

2   instead in his individual capacity for money damages.  Id.  Plaintiff further seeks to add the

3   following relief: (1) "All documents that indicate plaintiff is about to be paroled be removed

4   from his central file and medical file," and (2) "Defendants be ordered to provide plaintiff with

5   all procedural safeguards in the future in connection with any and all BPH matters...."  Id.

6          Plaintiff has failed to provide the court with a copy of his proposed amended

7   complaint, as he is required to do under Local Rule 137(c).  However, the opposition includes a

8   "Statement of Claim":

9              Plaintiff was subjected to cruel and unusual punishment.  Caruso gave to
               plaintiff departmental documents that informed plaintiff that he was about
10             to parole into the community, even though Caruso knew plaintiff had no
               release date.  This served to make plaintiff believe his appeal was
11             successful and that he was going home.  As plaintiff is mentally ill and
               developmentally disabled, he had no way to know the papers were false.
12             Further, Moeller did nothing to dispell [sic] plaintiff's notice that he was
               there for a release hearing.  He simply told plaintiff to see a lawyer.  When
13             plaintiff wasn't released, he wasn't given any explination [sic] as to why
               he wasn't being released after being informed by Caruso that he was being
14             released.  This caused plaintiff mental anguish & suffering, and caused
               him confusion.  All through this, no one was appointed to plaintiff by
15             CDCR to explain to him that there had been a mistake.  Caruso didn't, and
               Moeller didn't.  Instead, plaintiff was treated coldly and left in prison with
16             no understanding of what happened, why it happened or who to talk to for
               help understanding.  These facts clearly establish deliberate indifference
17             on Caruso and Moeller's part.

18   Doc. No. 24 at 6-7.

19          There is nothing in the opposition to indicate whether these claims have been

20   exhausted (42 U.S.C. § 1997e(a)), or when they accrued (see Cal. Civ. Proc. Code § 335.1).

21          Relevant Authority

22          *Leave to Amend*

23          A pro se litigant must be given leave to amend his or her complaint, and some

24   notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could

25   not be cured by amendment.  Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995), citing Noll v.

26   Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).  However, this liberality in granting leave to

1    amend is subject to qualification:

2    > If the underlying facts or circumstances relied upon by a plaintiff may be a
3    > proper subject of relief, he ought to be afforded an opportunity to test his
     > claim on the merits. In the absence of any apparent or declared reason -
4    > such as undue delay, bad faith or dilatory motive on the part of the
     > movant, repeated failure to cure deficiencies by amendments previously
5    > allowed, undue prejudice to the opposing party by virtue of allowance of
     > the amendment, futility of amendment, etc.- the leave sought should, as
6    > the rules require, be 'freely given.'

7    Foman v. Davis, 371 U.S. 178, 182 (1962).

8            Futile amendments should not be permitted.  See, e.g., DCD Programs, Ltd. v.

9    Leighton, 833 F.2d 183, 188 (9th Cir. 1987), quoting Klamath-Lake Pharmaceutical Ass'n v.

10   Klamath Medical Service Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983).  For example, leave to

11   amend would be futile, and leave to amend properly denied, where a plaintiff's alleged facts,

12   even if true, provide no basis for federal subject matter jurisdiction.  See Orsay v. U.S. Dept. of

13   Justice, 289 F.3d 1125, 1136 (9th Cir. 2002);  Pink v. Modoc Indian Health Project, Inc., 157

14   F.3d 1185, 1189 (9th Cir. 1998); Cato v. U.S., 70 F.3d at 1110.  See also Newman-Green, Inc. v.

15   Alfonzo-Larrain, 490 U.S. 826, 831 (1989) ("[28 U.S.C.] § 1653 speaks of amending

16   'allegations of jurisdiction,' which suggests that it addressed only incorrect statements about

17   jurisdiction that actually exists, and not defects in the jurisdictional facts themselves.")

18           *Eighth Amendment*

19           "'Because routine discomfort is part of the penalty that criminal offenders pay for

20   their offenses against society, only those deprivations denying the minimal civilized measure of

21   life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'"

22   Somers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997), quoting Hudson v. McMillian, 503 U.S.

23   1, 9, 112 S.Ct. 995, 1000 (1992) (omitting internal quotations and citations).

24   > [A] prison official cannot be found liable under the Eighth
     > Amendment for denying an inmate humane conditions of
25   > confinement unless the official knows of and disregards an
     > excessive risk to inmate health or safety; the official must both be
26   > aware of facts from which the inference could be drawn that a

10

1    substantial risk of serious harm exists, and he must also draw the
2    inference.

3    Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994).

4         However, "[p]rison officials have a duty to ensure that prisoners are provided

5    adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v.

6    Lewis, 217 F.3d 726, 731 (9th Cir. 2000), citing, inter alia, Farmer v. Brennan, 511 U.S. at 832;

7    Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981) ("[A]n institution's obligation under

8    the eighth amendment is at an end if it furnishes sentenced prisoners with adequate food,

9    clothing, shelter, sanitation, medical care, and personal safety." [internal quotations omitted]).

10        An Eighth Amendment claim that a prison official has deprived inmates of

11   humane conditions must meet two requirements, one objective and one subjective. Lopez v.

12   Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (en banc), quoting Allen v. Sakai, 48 F.3d 1082,

13   1087 (9th Cir. 1995). Under the objective requirement, the prison official's acts or omissions

14   must deprive an inmate of the minimal civilized measure of life's necessities. Id. The subjective

15   requirement, relating to defendant's state of mind, requires deliberate indifference. Id.

16        In addition, no federal civil action may be brought by a prisoner for mental or

17   emotional injury suffered while in custody without a prior showing of physical injury. 42 U.S.C.

18   § 1997e(e); Pierce v. County of Orange, 526 F.3d 1190, 1223-24 (9th Cir.), cert. denied, 555

19   U.S. 1031 (2008).

20             Analysis

21        In this case, leave to amend should be denied, as plaintiff has failed to articulate a

22   colorable Eighth Amendment claim, and any amendment would accordingly be futile.

23        Assuming for the purpose of analysis that plaintiff's claims are exhausted and

24   timely, and taking plaintiff's allegations of material fact as true and construing them in the light

25   most favorable to the plaintiff, plaintiff's allegations that Caruso and Moeller either misled him

26   about his parole date, or failed to correct his misconception, do not implicate constitutional

11

concerns because plaintiff has failed to identify a basic human need that was not met as a result of the false information.

In addition, any Eighth Amendment claims for compensatory damages against Caruso and Moeller would be barred because plaintiff may not bring a civil action for his mental and emotional injuries absent "a prior showing of physical injury." See 42 U.S.C. § 1997e(e); see also Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) (injury need not be significant but must be more than de minimus).

Accordingly, as it appears from plaintiff's statement of claim that his allegations do not and cannot support a colorable cause of action against Caruso and Moeller, the undersigned recommends that plaintiff's motion for leave to amend be denied.

Conclusion

For the reasons stated above, IT IS HEREBY RECOMMENDED that

1.  Defendants' motion for summary judgment (Doc. No. 21) be granted; and

2.  Plaintiff's motion to amend the complaint (Doc. No. 24) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-eight (28) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within twenty-eight (28) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 11, 2013.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:rb/will0055.fr

12